### GILMAN TUELL *versus* INHABITANTS OF PARIS.

A question of law cannot properly be presented for decision by a motion to set aside a verdict on the ground of error or misconduct of the jury.

If individual inhabitants of a town have knowledge of a defect in a road, this is sufficient notice to the town in its corporate capacity, of such defect.

ON the trial of this action a verdict was returned in favor of the plaintiffs, and the defendants moved that it should be set aside : —

1. Because the verdict is against evidence and the weight of the evidence at the trial.

2. Because the verdict was against the instructions of the presiding Judge to the jury.

3. Because the jury in assessing damages for the plaintiff, in order to find the amount of such damages, agreed to mark severally the amount of damages, and then add up the whole and divide the sum total by twelve, and thus find the damages; and found that sum, so ascertained, as damages.

4. Because the damages are excessive.

There was no bill of exceptions, or report of the presiding Judge, presenting any questions of law. Each party prepared a report of the evidence, and the presiding Judge decided wherein they disagreed. The facts sufficiently appear in the opinion of the Court.

*Howard*, for the defendants, in his argument, as matter of law, contended that in an action against a town for damages occasioned by a defect in a highway, the burthen of proof is on the plaintiff to show affirmatively, that he was driving with ordinary care and diligence. 11 East, 61 ; 6 Cowen, 189 ; 2 Pick. 621 ; 12 Pick. 177 ; 21 Pick. 146 ; 18 Maine R. 380 ; 21 Maine R. 31.

The plaintiff cannot recover, because the accident happened on the Lord's day, when the plaintiff was travelling in open violation of the law. Rev. St. c. 160, § 26.

The town had not reasonable notice of the defect in the highway, if any defect there was.

*Andrews* argued for the plaintiff; and to the point, that the

town had the notice required by the statute, cited 7 Greenl. 442; 3 Pick. 269; 13 Pick. 94.

This was a question of fact, and it was the peculiar province of the jury to make the decision. And in such case the Court will not set aside a verdict, even if they would have decided differently. 5 Cowen, 519; 2 Wend. 352; 5 Wend. 48; 8 Conn. R. 223; 6 Cowen, 519; 7 Mass. R. 261; 16 Maine R. 187; 2 Fairf. 335; 14 Maine R. 198; 19 Wend. 186.

The opinion of the Court, TENNEY J. taking no part in the decision, was drawn up by

SHEPLEY J. — This case is presented on a motion to set aside the verdict and grant a new trial. Several points have been presented in a written argument for the defendants.

1. It is contended, that the bridge from which the plaintiff was precipitated was not defective. It appears from the testimony, that there was a hill in the road a rod or two northerly of the bridge, described by a witness as " a pretty steep short hill," which one travelling from the north over the bridge must descend ; and that the bridge was so constructed across the stream, that if one continued to travel straight after descending the hill, he would pass off from the westerly side of the bridge a little past the centre of it. The horse of the plaintiff was travelling in that direction and passed off from that side of the bridge at about that place. The length of the bridge was thirty feet. There was on the westerly side, for a railing, a spruce pole, at the northerly end fastened to the top of a post prepared for that purpose. At the southerly end there had formerly been a post, which a witness states, that he had not seen there for a year or more ; and the southerly end of the pole was placed upon a log lying upon the bank of the stream and in no way fastened to it. There appear to have been formerly braces to sustain the posts, which had ceased to exist there. It does not appear, that supporters for the railing for the intermediate space of thirty feet, between the two ends, were at any time placed there. According to the testimony it

was about twelve feet from the plank of the bridge to the bed of the stream, which was covered with stones. After the accident the post, to which the rail had been fastened, remained in its place. The rail was thrown off into the stream, one end of it resting on the bank. The selectmen of the town soon after changed the position .of the bridge. Whatever opinions the witnesses may have expressed upon such a state of facts, the Court would not be authorized to set aside a verdict founded upon the conclusion, that the bridge was not at that time safe and convenient.

2. It is contended, that if the bridge was defective, there was not sufficient proof, that the town had notice of it.

Simeon Buck, an inhabitant of the town, residing within about one hundred rods of the bridge, is the witness who stated, that he had never seen a post at the southerly end of the railing for a year or more before the accident, and that he put that end of the rail on to the log twice or more. America Thayer, one of the selectmen, stated, that he had been over the bridge a few weeks before the accident. The jury would be authorized from such testimony to conclude, that the inhabitants had full notice of its actual condition.

3. It is contended, that the accident did not happen by reason of any defect in the.bridge, but was occasioned by the horse being vicious, dangerous, unsafe and uncontrolable.

There was much testimony to prove, that the horse had been ill broken, obstinate, restive, and so hard upon the bitt as to render it difficult to control him. And that the sight of the left eye had been impaired or destroyed, but whether before or after the accident, it did not clearly appear. The testimony also proved that the plaintiff's eyesight was defective; the eye being what is called nearsighted.

It is undoubtedly true, that the accident might have been occasioned by these causes or some of them. It can also be perceived, that if the horse bore so hard upon the bitt, that it was difficult or impossible for the plaintiff to diminish his speed, while passing down the hill and over the bridge, or to change the direction of his course, that if the bridge had been

built more nearly on the course of the road, or if the railing on the westerly side of it had been sufficiently strong, he might have passed over safely.

However vicious the horse might have been, there were two witnesses, who saw the plaintiff while passing on and near the bridge, and one who was in the wagon with him, and they all testify, that the horse travelled steadily and well up to the time of the accident. It was therefore necessary, that the jury should determine, whether the horse bore so hard upon the bitt as to occasion the accident, or whether it was more immediately occasioned by the peculiar construction of the bridge and its defective railing. From the testimony the jury might conclude, that it was occasioned by the latter without being under the influence of any bias or prejudice. The Court would not therefore be authorized on this ground to set their verdict aside.

4. It is contended, that the plaintiff was not entitled to recover, because he was unlawfully travelling on the Lord's day when the accident happened.

It does not appear from the case, that any such legal point was made at the trial. If there had been, it is possible, that the plaintiff could have exhibited a sufficient excuse. It is however a sufficient answer now, that such a question of law cannot be properly presented for consideration or decision, by a motion to set aside the verdict, on the ground of error or misconduct of the jury. There is no bill of exceptions presented, or question of law in any other manner reserved.

Although stated in the motion, it is not now insisted upon, that the damages assessed were so unreasonable as to authorize the Court to set aside the verdict because they were excessive.

*The motion is overruled,*
*and judgment on the verdict.*